IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | :     Crim. No. 12-582 |
| MICHAEL POULS | : |

UNITED STATES' CHANGE OF PLEA MEMORANDUM

1. Introduction

The United States, by its attorneys, Zane David Memeger, United States Attorney and Assistant United States Attorney, Pamela Foa, for the Eastern District of Pennsylvania, submits this memorandum to assist the Court at the change of plea hearing for defendant Michael Pouls scheduled for December 10, 2012 at 3:00 p.m.

2. Procedural History

On October 19, 2012, defendant Michael Pouls was charged by Information with wire fraud, in violation of 18 U.S.C. § 1343, bank fraud, in violation of 18 U.S.C. § 1344 and false statements to obtain loans, in violation of 18 U.S.C. § 1014. The charges arose from the defendant's inducing two banks, Wilmington Trust and National Penn Bank to lend him money on the basis of securities statements that fraudulently and materially misrepresented his liquid assets. On the basis of his representations that he had and would maintain at least $20,000,000 in securities, Wilmington Trust extended a $10,000,000 loan to the defendant. On the basis of a similar material and fraudulent misrepresentation that he had and would maintain securities equal to his loan, National Penn Bank extended a loan of $3,350,000 to the defendant.

3. Plea Agreement

The parties have entered into a plea agreement in this matter. Under the terms of the plea

agreement, the defendant will plead to Counts 1 through 4 of the Information, charging in Count 1 wire fraud, in violation of 18 U.S.C. § 1343, 1349 and 2, in Counts 2 and 4 false statements, in violation of 18 U.S.C. § 1014, and in Count 3 bank fraud, in violation of 18 U.S.C. § 1344.

In the plea agreement, the parties have agreed to stipulations regarding the applicable Sentencing Guideline ("USSG") range, including that:

> The defendant's Sentencing Guidelines shall be calculated on the basis of an intended fraud loss of $13,350,000, pursuant to USSG § 2B1.1(a) and (b).

> As of the date of the execution of the guilty plea, the defendant had accepted responsibility and timely given notice to the government of his intent to plead guilty, for which there is, in total, a three-level decrease under USSG § 3E1.1(a) and (b).

In the plea agreement, the defendant waives his rights under the Hyde Amendment, 18 U.S.C. § 3006A (Statutory Note) for attorney's fees and other litigation expenses arising out of the investigation and prosecution of this matter.

In addition, the defendant has agreed to waive his appellate rights and rights to collaterally challenge his plea and sentence, with the following limited exceptions:  if the government appeals the Court's sentence, then the defendant may file an appeal; otherwise, the defendant may file an appeal raising only the following issues:  that the Court imposed a sentence on the defendant that exceeds the statutory maximum, the Court erroneously departed upward in arriving at a sentence, or in the exercise of its discretion, the Court imposed an unreasonable sentence above the advisory sentence determined by the Court.

> The defendant represented that he is satisfied with his attorneys.  In this case, his attorneys include all the attorneys of record:  those who represented him at the time he entered

into the plea agreement with the government and those who represent him at the change of plea hearing.

The defendant represented that he entered the plea agreement and has agreed to plead guilty because the defendant admits that he is guilty.

All the terms of the agreement between the parties are in the written plea agreement; there are no other terms, conditions or promises to the plea agreement and any modification or addition to the plea agreement will be in writing, signed by the parties.

4. Elements of the Offenses

The essential elements of the offenses to which the defendant has agreed to plead guilty are as follows:

    a. WIRE FRAUD

To prove a violation of 18 U.S.C. §1343, the government must prove beyond a reasonable doubt that:

    (1) the defendant knowingly and willfully participated in a scheme to defraud,

    (2) with the specific intent to defraud, and

    (3) used or caused others to use interstate wire communications in furtherance of the scheme.

    b. BANK FRAUD

To prove a violation of 18 U.S.C. § 1344, the government must prove beyond a reasonable doubt that:

    (1) The defendant knowingly executed a scheme to defraud a financial institution; or a scheme to obtain any of the money owned by or under the

    custody or control of a financial institution, by means of false or fraudulent pretenses, representations, or promises;

    (2) the falsehood was material;

    (3) The defendant did so with the intent to defraud; and

    (4) The financial institution was insured at the time by the Federal Deposit Insurance Corporation.

  c.  FALSE STATEMENTS TO BANK TO INDUCE LOANS

To prove a violation of 18 U.S.C. § 1014, the government must prove beyond a reasonable doubt that:

    (1) The defendant knowingly made a false statement or misrepresented security;

    (2) To a bank insured by the FDIC;

    (3) To induce some action on the part of the bank.

  d.  AIDING AND ABETTING

    (1) The defendant associated himself with the criminal venture, participated in it as something he wished to bring about, and sought by his words or action to make it succeed.

5.    Statutory Maximum Penalties

    The defendant could be sentenced to the following statutory maximum sentences: Count 1 (wire fraud):  The maximum penalty is: 30 years' imprisonment, 5 years supervised release, a $1,000,000 fine, and a $100 special assessment;  Counts 2 and 4 (false statement in loan application) : 30 years' imprisonment, 5 years supervised release, a $1,000,000 fine and a

$100 special assessment for each violation; and Count 3 (bank fraud): 30 years' imprisonment, 5 years supervised release, a $1,000,000 fine and a $100 special assessment.

Therefore, the <u>Total Maximum Sentence</u> is: 120 years' imprisonment, 5 years supervised release, a $4,000,000 fine and a $400 special assessment. In addition, the defendant shall be liable in restitution and in forfeiture for the loan proceeds and properties traceable thereto.

Further the defendant understands that supervised release may be revoked if its terms and conditions are violated. When supervised release is revoked, the original term of imprisonment may be increased by up to 3years per count of conviction in the case of Class B felonies such as each of those alleged in the Information. Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

6. Factual Basis for the Plea

Were this matter to go to trial, the government would establish its case against the defendant through the business records relating to the conditions regarding issuance of loans to the defendant by Wilmington Bank and Penn National Bank, and the defendant's lies to the banks to make it appear that each bank's conditions had been met, when they had not. To establish the extent and nature of the lies and thus the fraud, the government would introduce copies of the defendant's securities accounts at TD Ameritrade from 2007 through 2010. We would also introduce the testimony of the bank representatives from each bank to explain the relevant terms of the loans and the false, fraudulent and fictitious representations defendant Pouls

make to the banks, orally and by false, fraudulent and fictitious documents to make it appear that he met the relevant terms of each bank.

Through this evidence the government would establish that the defendant had a substantial borrowing history with Wilmington Bank.  In 2008, the defendant came to Wilmington Trust with a request to borrow $10 million.  To secure the loan, defendant Pouls represented to Wilmington Bank that he had two securities accounts at TD Ameritrade with $22,600,00 in one and $5,900,000 in the other.  Defendant Pouls made this representation, among other ways, by sending an email through the internet from his home in Gladwyne, Pennsylvania, on February 24, 2008 to T.G. at Wilmington Trust, located in Delaware, in which he said, "I recall you asking about  Ameritrade Statements in the meeting.  I now have two accounts and they are attached.  The liquidity is about $28 million."  The emailed statements the defendant attached to his email were not those of TD Ameritrade, but false, fictitious and fraudulent "statements." that defendant Pouls created or caused to be created to hide that he had virtually nothing in his TD Ameritrade accounts.  This email, including its attachments, is the basis of Count 1 and 2 of the Informtion.

On June 9, 2008, on the basis of these fraudulent representations and documents, Wilmington Bank and Pouls signed a line of credit to Pouls for a maximum of $10,000,000.  The agreement required Pouls to maintain $20 million in his TD Ameritrade brokerage accounts.  He executed the agreement, knowing that in June 2008, he fraudulently misrepresented what he had and would maintain in his TD Ameritrade accounts.

He was required to provide quarterly statements of his account by Wilmington Bank; its representative in the Gladwyne office asked for them on a monthly basis to monitor closely the money in these accounts.  Defendant Pouls physically made up, emailed and faxed to

Wilmington Bank, as necessary, false, fictitious and fraudulent account statements.  Between 2008 and 2010, on the basis of the defendant's initial and continuing false and fraudulent representations and fictitious documents, Wilmington Bank permitted the defendant to borrow the full line of credit:  $10,000,000.   To secure its loan, however, Wilmington Bank accepted a "negative pledge," as its security, that is, a promise by the defendant not to use it or use it as collateral for any other purpose.

In fact, in 2007, defendant Pouls had already given a negative pledge to National Penn Bank regarding at least one of the same TD Ameritrade accounts.  Defendant Pouls wanted to borrow from National Penn Bank $3,350,000.  To effect the loan, defendant Pouls represented to National Penn Bank that he would maintain at a minimum in the Ameritrade account ending 3703, a sum equal to the amount National Penn Bank agreed to lend him, that is, $3,350,000.  Prior to executing the loan document with National Penn Bank on November 30, 2007, defendant Pouls depleted TD Ameritrade account no. 3703 so that at the time of the closing of the loan there was only approximately $3,300 in the account.  Nonetheless, on November 20, 2007, preliminary to the closing of the loan, Pouls signed a loan agreement with National Penn Bank, which read in pertinent part:  " Michael G. Pouls has pledged $3,350,000 of his marketable securities account at Ameritrade Account [ending] 3703.  The minimum balance of $3,350,000 must be maintained and will be tested monthly."  These fraudulent representations are the basis of Counts 3 and 4 of the Information.  Just as he did with Wilmington Bank, defendant Pouls misrepresented to National Penn Bank the amount of money that he had in his TD Ameritrade accounts, and emailed and faxed to National Penn Bank false, fraudulent and fictitious Ameritrade account statements, as necessary, until the fraud was discovered by National Penn Bank in approximately 2010.

These are just some of the facts the government would establish at trial and are sufficient to establish the elements of the crimes charged in the case.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


_____
PAMELA FOA
Assistant United States Attorney

<u>Certificate of Service</u>

Pamela Foa certifies that she is an Assistant United States Attorney and that she caused a copy of the foregoing United States' Change of Plea Memorandum to be served on defendant Pouls, by his attorneys, by email, addressed to:

> Bruce W. Kauffman, Esq.
> bwk@elliottgreenleaf.com
>
> Melissa Murphy Weber, Esq.
> mmw@elliottgreenleaf.com
>
> Bruce L. Castor, Esq.
> blc@elliottgreenleaf.com

this 6th day of December 2012.

_____
PAMELA FOA